**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17 C 8423 |
| ) | |
| ELEAZAR CORRAL VALENZUELA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The United States seeks to denaturalize Eleazar Corral Valenzuela (Corral), a naturalized U.S. citizen, under 8 U.S.C. § 1451(a) on the ground that he obtained U.S. citizenship illegally or by willful misrepresentation or concealment of a material fact. Corral has filed a "Motion to Dismiss / Strike Complaint" in which he requests discovery and a hearing on certain issues that he claims may warrant dismissal of the action, and the United States has moved under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings on three of the five claims in its complaint. For the reasons stated below, the Court denies Corral's motion and grants the government's motion for judgment on the pleadings in part.

### Background

Corral, who was born in Mexico, was admitted to the United States as a lawful permanent resident on February 10, 1994. In January 1999, Corral applied for naturalization using a Form N-400 Application for Naturalization. The form is stamped

January 14, 1999.  *See* Compl., Ex. E at 3.  Part 7, Question 15(a) of the Form N-400 asks "Have you ever . . . knowingly committed any crime for which you have not been arrested?"  *Id.* at 3.  On Corral's Form N-400, that question is answered in the negative.  *Id.*  The certification in Part 11 of the form states "I certify . . . under penalty of perjury under the laws of the United States of America that this application, and the evidence submitted with it, is all true and correct."  *Id.* at 4.  Corral signed this certification on December 30, 1998.  *Id.*  In May 2000, an Immigration and Naturalization Service (INS)[1] officer interviewed Corral under oath regarding his naturalization application.  On May 10, 2000, the INS approved his naturalization application.  Corral took the oath of allegiance and was naturalized as a United States citizen on June 15, 2000.

Two months later, in August 2000, a grand jury in Kane County, Illinois indicted Corral on seven counts of aggravated criminal sexual abuse in violation of chapter 720, section 5/12-16(b)[2] of the Illinois Compiled Statutes.  *See* Compl., Ex. B (Aug. 9, 2000 Indictment); 720 ILCS 5/12-16(b) (1998).  On November 2, 2000, Corral pled guilty to count 1 of the indictment, which charged the following:

> On or about June 9, 1998 through February 26, 2000, Eleazar Corral committed the offense of Aggravated Criminal Sexual Abuse, Class 2 Felony[,] in violation of Chapter 720, Section 5/12-16(b) of the Illinois Compiled Statutes, as amended, in that said defendant, [redacted] committed an act of sexual conduct with [redacted] in that the defendant knowingly touched the vagina of [redacted] for the purpose of the sexual gratification of the defendant.

---

[1] Congress transferred the functions of the INS to the Department of Homeland Security (DHS) on March 1, 2003.  *Mendoza v. Sessions*, 891 F.3d 672, 674 n.1 (7th Cir. 2018).  The Court refers to the INS throughout this opinion because that is the agency that was responsible for naturalization proceedings during the relevant time.
[2] Renumbered as 720 ILCS 5/11-1.60(b) and amended effective July 1, 2011.  2010 Ill. Legis. Serv. P.A. 96-1551, Art. 2, § 5.

Aug. 9, 2000 Indictment at 1; *see also* Compl., Ex. C (Nov. 2, 2000 Plea Hearing Tr.). The state court entered a judgment finding Corral guilty of aggravated criminal sexual abuse in violation of 720 ILCS 5/12-16(b), sentenced him to 48 months of sex offender probation, and ordered him to register as a sex offender. *See* Compl., Ex. D (Nov. 2, 2000 Judgment).

In November 2017, the United States filed the present denaturalization action against Corral. The government's complaint to revoke naturalization contains five counts:

> 1. Illegal procurement of naturalization: lack of good moral character (crime involving moral turpitude)
>
> 2. Illegal procurement of naturalization: lack of good moral character (unlawful act adversely reflecting on moral character)
>
> 3. Illegal procurement of naturalization: lack of good moral character (false testimony)
>
> 4. Illegal procurement of naturalization: lack of good moral character (unlawful act of providing false testimony)
>
> 5. Procurement of naturalization by concealment of a material fact or by willful misrepresentation

Compl. at 7-12. In January 2018, Corral filed a motion entitled "Defendant's Motion To Dismiss / Strike Complaint," in which he asks the Court to authorize discovery and hold a hearing on whether the complaint should be dismissed as barred by laches or as a violation of Corral's due process or equal protection rights. In February 2018, the United States moved for judgment on the pleadings on counts 1, 2, and 5 of the complaint, arguing that because Corral is estopped from denying the essential elements of the offense to which he pled guilty, there is no genuine dispute of material fact and it is entitled to judgment as a matter of law on those counts.

3

## Discussion

Under 8 U.S.C. § 1427(a), an individual may not be naturalized as a citizen of the United States unless he or she (1) meets certain residence and physical presence requirements during the five-year period immediately preceding the date of filing the naturalization application, (2) "has resided continuously within the United States from the date of the application up to the time of admission to citizenship," and (3) "during all the periods referred to in this subsection has been and still is a person of good moral character." 8 U.S.C. § 1427(a). The applicant for naturalization "bears the burden of demonstrating that, during the statutorily prescribed period, he or she has been and continues to be a person of good moral character. This includes the period between the examination and the administration of the oath of allegiance." 8 C.F.R. § 316.10(a)(1).

Under 8 U.S.C. § 1451(a), the United States may institute denaturalization proceedings "for the purpose of revoking and setting aside the order admitting [a] person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). A certificate of naturalization is "illegally procured" if "the congressionally imposed prerequisites to the acquisition of citizenship," including the good moral character requirement, are not met when naturalization is granted. *Fedorenko v. United States*, 449 U.S. 490, 506 (1981); *see also United States v. Kairys*, 782 F.2d 1374, 1376 n.1 (7th Cir. 1986) ("Naturalization is illegally procured if any statutory requirement is not met at the time naturalization is granted.").

The right of citizenship is a precious one. *Costello v. United States*, 365 U.S.

265, 269 (1961); *see also Schneiderman v. United States*, 320 U.S. 118, 122 (1943) (explaining that "[i]t would be difficult to exaggerate" the value and importance of the right of citizenship). The Supreme Court has repeatedly recognized that "severe consequences may attend" the loss of citizenship and that those consequences are especially dire for those who have lived and worked in the United States as citizens for many years. *See Costello*, 365 U.S. at 269; *Fedorenko*, 449 U.S. at 505; *Chaunt v. United States*, 364 U.S. 350, 353 (1960); *Schneiderman*, 320 U.S. at 122; *see also Knauer v. United States*, 328 U.S. 654, 659 (1946) ("[D]enaturalization, like deportation, may result in the loss of all that makes life worth living.") (internal quotation marks and citation omitted).

Given the importance of the right of citizenship—and the potentially devastating toll that loss of that citizenship is likely to take on a naturalized citizen and his or her family—it is little wonder that the Supreme Court has held that "such a right once conferred should not be taken away without the clearest sort of justification and proof." *Schneiderman*, 320 U.S. at 122. Accordingly, the government carries a heavy burden of proof when attempting to divest a naturalized citizen of citizenship after it has been granted: denaturalization is warranted only if the evidence is "clear, unequivocal, and convincing," such that it does not "leave the issue in doubt." *Costello*, 365 U.S. at 269 (internal quotation marks and citations omitted); *see also United States v. Firishchak*, 468 F.3d 1015, 1023 (7th Cir. 2006); *Kairys*, 782 F.2d at 1378.

**A.      Corral's "motion to dismiss / strike complaint"**

As previously indicated, Corral's "Motion to Dismiss / Strike Complaint" is not so much a motion to dismiss as a request for discovery and a hearing on certain issues

that he contends may warrant dismissal of the action. In support of this motion, Corral first questions whether the crime to which he pled guilty is necessarily a crime involving moral turpitude. Corral also argues that the government has failed to adequately support its contentions that he lied or made a material misrepresentation to the INS agent who conducted his naturalization interview and that the agent would have been precluded from approving his application had Corral disclosed his crime during the application process.[3]

As previously explained, there is no doubt that the government bears a heavy burden of proof in a denaturalization proceeding. But the fact that the government has not proven all of the elements of each count in the complaint at this stage does not mean that additional discovery and a hearing are necessarily warranted. In its complaint, the government has presented five separate (albeit overlapping) grounds for denaturalization. Any of the five counts alleged—if proven by clear, unequivocal, and convincing evidence—would provide an independent basis for revoking Corral's citizenship.

As an initial matter, the issue of whether a crime is properly classified as a crime involving moral turpitude is a question of law. *See Lagunas-Salgado v. Holder*, 584 F.3d 707, 710 (7th Cir. 2009). Secondly, to establish that denaturalization is warranted

---

[3] Corral further argues that such issues are properly resolved by a jury. As the government notes, however, the case Corral cites in support of this argument, *Maslenjak v. United States*, 137 S. Ct. 1918 (2017), deals not with 8 U.S.C. § 1451, which is a civil statute, but with its criminal counterpart, 18 U.S.C. § 1425(a). *Id.* at 1928 ("[T]he proper causal inquiry under § 1425(a) is framed in objective terms: To decide whether a defendant acquired citizenship by means of a lie, a jury must evaluate how knowledge of the real facts would have affected a reasonable government official properly applying naturalization law."). The Seventh Circuit has long held that there is no right to a jury trial in civil denaturalization proceedings. *See, e.g., Firishchak*, 468 F.3d at 1026; *Kairys*, 782 F.2d at 1384.

6

on counts 1 or 2 of the complaint, the government need not prove either (1) that Corral lied or made a material misrepresentation to the INS agent who conducted his naturalization interview or (2) that the agent would have been precluded from approving his application had Corral disclosed his crime during the application process. Specifically, the question of whether Corral lied or otherwise made a material misrepresentation to the INS agent who conducted his naturalization interview has no bearing on whether Corral committed a crime involving moral turpitude (count 1) or an unlawful act adversely reflecting on moral character (count 2) that would prevent him from establishing that he possessed the requisite good moral character during the relevant statutory period. And if the crime to which Corral pled guilty in 2000 is indeed a crime involving moral turpitude, given the timing of the crime, there is no question that he would have been precluded from establishing that he possessed the requisite good moral character through June 15, 2000, the date he became a citizen. *See* 8 U.S.C. §§ 1101(f)(3), 1182(a)(2)(A)(i)(I) ("[N]o person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established," was convicted of or admits having committed "a crime involving moral turpitude (other than a purely political offense)" unless one of the exceptions enumerated in sub-section 1182(a)(2)(A)(ii) apply); *see also* 8 C.F.R. § 316.10(b)(2)(i) ("An applicant shall be found to lack good moral character if during the statutory period the applicant: (i) Committed one or more crimes involving moral turpitude, other than a purely political offense, for which the applicant was convicted, except as specified in section 212(a)(2)[A](ii)(II) of the Act. . . ."). Because the Court does not need to decide the issues raised by Corral to determine whether the

government is entitled to judgment as a matter of law on certain counts of the complaint that provide an independent basis for denaturalization, the Court denies Corral's request for additional discovery and a hearing on those issues.[4]

Corral also argues that the Court should allow discovery and hold a hearing on whether the present action is barred by laches, in light of the fact that the government did not initiate denaturalization proceedings until seventeen years after Corral's conviction, pursuant to a guilty plea, of aggravated criminal sexual abuse. In order for the defense of laches to apply, there must be proof of both (1) lack of diligence by the party against whom the defense is asserted and (2) prejudice to the party asserting the defense. *Costello*, 365 U.S. at 282; *see also Navarro v. Neal*, 716 F.3d 425, 429 (7th Cir. 2013). Corral contends that the government should have to explain why it took seventeen years to bring this suit and that he will be prejudiced if the INS agent who conducted his naturalization interview in 2000 is no longer available to testify as a result of the delay. The government primarily argues in response that the defense of laches does not apply against the United States in a civil denaturalization action. Alternatively, the government contends that a laches defense does not apply in this particular case because Corral cannot show prejudice.

The Court need not decide whether laches is a valid defense to a denaturalization action. Even if it is, and even if the seventeen-year lapse between Corral's conviction and the initiation of the present suit reflects a lack of diligence, Corral cannot establish that he has been prejudiced by this delay with respect to counts 1 or 2

---

[4] As discussed below, the judgment granted by way of this decision is not final because it does not dispose of all of the government's claims. The remaining claims will have to be disposed of in some way in order to permit entry of a final judgment. If the government pursues the remaining claims, Corral may renew his request for discovery.

8

of the complaint. Even if the INS agent who conducted Corral's naturalization interview is, as Corral suggests, unavailable to testify, as previously explained, counts 1 and 2 of the complaint do not depend on the agent's testimony or what happened during the naturalization interview, and Corral has suggested no other source of prejudice. *See Costello*, 365 U.S. at 282-83. For that reason, the Court concludes that additional discovery and a hearing on Corral's claimed defense of laches is unwarranted.

Lastly, Corral contends that the government's attempt to revoke his citizenship raises due process and equal protection concerns. Corral suggests that the government's decision to target him for denaturalization after seventeen years is constitutionally suspicious in light of the change in administration earlier in the year and the likelihood that the government has not initiated proceedings against other naturalized citizens who are known child sex abusers and felons. These allegations are, on the present record, conjectural, and as such they are insufficient to warrant discovery or a hearing. Corral's contention that to deny him a hearing on this issue violates his due process rights is likewise without merit.

The Court therefore denies Corral's "Motion to Dismiss / Strike Complaint."

**B.    Government's motion for judgment on the pleadings**

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). On a motion for judgment on the pleadings, the Court considers the complaint, the answer, and any written instruments attached as exhibits,[5] and it views the facts in the light most

---

[5] To the extent that Corral objects to the Court's reference to the unredacted versions of the exhibits attached to the complaint, the Court notes that it may take into consideration documents incorporated by reference to the pleadings and may take

favorable to the non-moving party. *See N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998); *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). Judgment on the pleadings is appropriate only if there is no disputed issue of material fact and the moving party is clearly entitled to judgment as a matter of law. *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017).

As previously noted, the United States has moved for judgment on the pleadings with respect to counts 1, 2, and 5 of the complaint.

### 1. Count 1 (illegal procurement of naturalization: lack of good moral character—crime involving moral turpitude)

The United States first contends that it is entitled to judgment on the pleadings on count 1. The government argues that there is no genuine dispute that Corral illegally procured his naturalization, because he committed a crime involving moral turpitude within the statutory period during which he was required to establish good moral character.

As previously noted, in November 2000—less than five months after becoming a citizen—Corral pled guilty to one count of aggravated criminal sexual abuse in violation of 720 ILCS 5/12-16(b), and the state court entered judgment on the same. *See* Aug. 9, 2000 Indictment; Nov. 2, 2000 Plea Hearing Tr.; Nov. 2, 2000 Judgment. At that time, section 5/12-16(b) read as follows: "The accused commits aggravated criminal sexual abuse if he or she commits an act of sexual conduct with a victim who was under 18 years of age when the act was committed and the accused was a family member." 720 ILCS 5/12-16(b) (1998). The unredacted version of the indictment leaves no doubt that

---

judicial notice of matters of public record. *See, e.g.*, *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017).

the victim was both a minor and one of Corral's family members. The government contends that, by virtue of his guilty plea and subsequent conviction, Corral is collaterally estopped from denying that he sexually abused a minor child who was also a family member.

There is no question that federal courts are obligated to give state court judgments the "same effect as they would have in the courts of the state rendering them." *Brown v. Green*, 738 F.2d 202, 205 (7th Cir. 1984) (citing 28 U.S.C. § 1738). The Court is not persuaded, however, that it is appropriate to invoke the doctrine of collateral estoppel in this context. In *American Family Mutual Insurance Co. v. Savickas*, 193 Ill. 2d 378, 739 N.E.2d 445 (2000), the Illinois Supreme Court[6] explained that "estoppel effect may be accorded to a prior criminal conviction in an appropriate case." *Id.* at 387, 739 N.E.2d at 451. Three threshold requirements must be met before the doctrine of collateral estoppel may be applied: (1) the issue decided in the prior adjudication must be identical to the issue in the present suit; (2) there must have been a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted must have been a party (or in privity with a party) to the prior adjudication. *Id.* Additionally, the party against whom estoppel is asserted "must actually have litigated the issue in the first suit and a decision on the issue must have been necessary to the judgment in the first litigation." *Id.* Even when the threshold requirements for collateral estoppel are satisfied, "the doctrine should not be applied unless it is clear that no unfairness will result to the party sought to be estopped." *Id.* at

---

[6] "Federal courts must apply a state's preclusion rules to a state court's decision unless the federal statute being sued under explicitly provides otherwise." *Brown*, 738 F.2d at 205-06.

11

388, 739 N.E.2d at 451.

The problem here is that the issue in question—whether Corral sexually abused a minor child who was also a family member between June 1998 and February 2000—was not "actually litigated" in Corral's criminal case. Rather, Corral pled guilty to the offense, and the state court entered a judgment accordingly. Thus the doctrine of collateral estoppel is not an appropriate fit in this case.

That, however, is not the end of the matter. Under Illinois law, "[a] judgment rendered by a court having jurisdiction of the parties and the subject matter" is "binding upon . . . all parties and privies to it, until it is reversed in a regular proceeding for that purpose." *Malone v. Cosentino*, 99 Ill. 2d 29, 32, 457 N.E.2d 395, 397 (1983) (internal quotation marks omitted). Such a judgment, "unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, in respect of its validity, verity, or binding effect . . . in any collateral action or proceeding." *Id.* (internal quotation marks omitted); *see also Work Zone Safety, Inc. v. Crest Hill Land Dev., LLC*, 2015 IL App (1st) 140088, ¶ 13, 29 N.E.3d 520, 526 ("'Once a court with proper jurisdiction has entered a final judgment, that judgment can only be attacked on direct appeal, or in one of the traditional collateral proceedings now defined by statute'—namely, habeas corpus, relief from judgment under section 2-1401, or a postconviction hearing.") (quoting *Malone*, 99 Ill. 2d at 32-33, 457 N.E.2d at 397). The state court entered a final judgment finding Corral guilty, pursuant to his plea, of aggravated criminal sexual abuse in violation of 720 ILCS 5/12-16(b). *See* Nov. 2, 2000 Judgment; 720 ILCS 5/12-16(b) (1998). That judgment is binding on Corral, and the government is entitled to rely on it in this case. Corral may not collaterally attack the judgment in the present proceeding

(nor has he sought to attack it in state court via one of the mechanisms established under state law). *See, e.g.*, *Village of Vernon Hills v. Heelan*, 2014 IL App (2d) 130823, ¶ 29, 14 N.E.3d 1222, 1230; *see also United States v. Ep*, No. 02 CV 780, 2003 WL 22118926, at *4 (N.D. Ill. Sept. 11, 2003) (noting that the court is "not in a position to entertain" the defendant's collateral attack on the underlying judgment of criminal conviction in denaturalization proceedings based in part on that conviction).

Corral contends that "the purported State court 'conviction' was void *ab initio*" because count 1 of the indictment did not state either that the alleged victim was under 18 years of age or that Corral was a family member, both of which are elements of the offense charged. Def.'s Resp. to Pl.'s Mot. for J. on the Pleadings at 2. This is incorrect. Although it is not possible to discern from the redacted version of the indictment filed with the complaint that the victim was a minor or a family member of Corral, the unredacted version of count 1 of the indictment states unequivocally that the victim was both a minor and a family member.[7] The Court notes that count 1 of the indictment is less than clear in another way: it states that Corral committed this offense "on or about June 9, 1998 through February 26, 2000." Aug. 9, 2000 Indictment at 1. Corral could not have committed the discrete act of aggravated criminal sexual abuse described in count 1 "on or about June 9, 1998 *through* February 26, 2000." *Id.* (emphasis added). Nonetheless, "[t]he date of the offense is not an essential factor in child sex offense cases." *People v. Guerrero*, 356 Ill. App. 3d 22, 27, 826 N.E.2d 485, 489 (2005) ("In cases involving the sexual abuse of a child, flexibility is permitted regarding the date requirement necessary under the Code."). Accordingly, Corral's

---

[7] Out of respect for the victim's privacy, the Court will not specify the familial relationship in this opinion.

13

conviction is not void *ab initio* as Corral suggests. Nor is the lack of specificity regarding the date of the crime material to the questions to be decided in the present case—the entire period from June 9, 1998 through February 26, 2000 falls within the statutory period during which Corral was required to prove good moral character, because although Corral filed his naturalization application in January 1999, he did not take the oath of citizenship until June 2000. *See* 8 U.S.C. § 1427(a); 8 C.F.R. § 316.10(a)(1). The November 2000 judgment conclusively establishes that Corral committed the crime of aggravated criminal sexual abuse of a minor child who was also a family member between June 1998 and February 2000.

The government contends that Corral illegally procured his June 2000 naturalization because the crime of which he was convicted is a crime involving moral turpitude and he committed it during the statutory period during which he was required to establish good moral character. An individual shall be found to lack good moral character if, among other things, "during the period for which good moral character is required to be established," he or she was convicted of or committed "a crime involving moral turpitude (other than a purely political offense). . . ." 8 U.S.C. §§ 1101(f)(3), 1182(a)(2)(A)(i)(I); *see also* 8 C.F.R. § 316.10(b)(2)(i). The term "crime involving moral turpitude" is not defined by statute. *Marin-Rodriguez v. Holder*, 710 F.3d 734, 737 (7th Cir. 2013). The Board of Immigration Appeals has described a crime of moral turpitude as "including 'conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.'" *Lagunas-Salgado*, 584 F.3d at 710 (quoting *In re Solon*, 24 I. & N. Dec. 239, 240 (BIA 2007)). In determining whether a particular

14

crime involves moral turpitude, the Seventh Circuit asks "whether the act is ethically wrong without any need for legal prohibition (acts wrong in themselves, or *malum in se*) or only ethically neutral and forbidden only by positive enactment (acts wrong because they are so decreed, or *malum prohibitum*)." *Id.* at 710-11 (internal quotation marks and citation omitted).

As previously noted, the relevant subsection of the criminal statute under which Corral was convicted defined aggravated criminal sexual abuse as "an act of sexual conduct with a victim who was under 18 years of age when the act was committed and the accused was a family member." 720 ILCS 5/12-16(b) (1998). At the time, the statute defined "sexual conduct" as follows:

> any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused, or any part of the body of a child under 13 years of age, or any transfer or transmission of semen by the accused upon any part of the clothed or unclothed body of the victim, for the purpose of sexual gratification or arousal of the victim or the accused.

720 ILCS 5/12-12(e) (2000). The sexual abuse of a minor child—one who is a family member, no less—is undoubtedly depraved and contrary to the accepted rules of morality. *See, e.g.*, *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002) ("The sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people."); *United States v. Dave*, No. 13 C 8867, 2015 WL 5590696, at *2 (N.D. Ill. Sept. 21, 2015) ("The inherent impropriety of sexual contact between an adult and a child, which animates statutory rape laws, has led numerous courts to conclude that even strict liability sex offenses involving minors are morally turpitudinous."); *United States v. Gayle*, 996 F. Supp. 2d 42, 51 (D. Conn. 2014) ("Sexual abuse against a minor constitutes a crime of moral turpitude because of its

15

inherently vile and depraved nature."); *Ep*, 2003 WL 22118926, at *5 ("[C]rimes involving sexual abuse, especially those involving children, have generally been recognized as crimes involving moral turpitude."); *see also Matter of Silva-Trevino*, 26 I. & N. Dec. 826, 834 (BIA 2016) (a crime involving intentional sexual conduct by an adult with a child is one that involves moral turpitude as long as the perpetrator knew or should have known the victim was a minor). It is therefore plain to this Court that the crime of which Corral was convicted is one of moral turpitude.

Because Corral committed this crime between June 1998 and February 2000, there is likewise no question that he was precluded from establishing good moral character for the relevant statutory period, which began in January 1994 (five years before the filing date of Corral's application for naturalization) and did not end until he took the oath of allegiance to the United States in June 2000. *See* 8 U.S.C. § 1427(a); 8 U.S.C. §§ 1101(f)(3), 1182(a)(2)(A)(i)(I); 8 C.F.R. §§ 316.10(a)(1), (b)(2)(i). Accordingly, Corral was not eligible to become a naturalized citizen. The Court concludes that there is no genuine factual dispute and that Corral's June 2000 naturalization was illegally procured based on his inability to establish good moral character during the requisite period due to having committed a crime involving moral turpitude. The government has proven by clear, unequivocal, and convincing evidence that it is entitled to judgment as a matter of law on this count. The Court therefore grants the United States' motion for judgment on the pleadings with respect to count 1 of the complaint.

### 2. Count 2 (illegal procurement of naturalization: lack of good moral character—unlawful acts adversely reflecting on moral character)

The government has also moved for judgment on the pleadings on count 2. It

argues that even if Corral's crime had not been one involving moral turpitude, he nonetheless would have been unable to establish good moral character during the statutory period, because his aggravated criminal sexual abuse conviction is an unlawful act that adversely reflects upon his moral character.

An individual who commits "unlawful acts that adversely reflect upon [his or her] moral character" during the statutory period shall also be found to lack good moral character unless he or she establishes "extenuating circumstances." 8 C.F.R. § 316.10(b)(3)(iii); *see also United States v. Suarez*, 664 F.3d 655, 660-61 (7th Cir. 2011) (according *Chevron* deference to 8 C.F.R. § 316.10(b)).

For the reasons explained above, the November 2000 judgment conclusively establishes that Corral committed an unlawful act of aggravated criminal sexual abuse between June 1998 and February 2000. There is no question that Corral's crime adversely reflects upon his moral character, but the pleadings do not establish by clear, unequivocal, and convincing evidence that there were no extenuating circumstances that mitigate the severity of that crime. *See Suarez*, 664 F.3d at 662 ("Extenuating circumstances are those which render a crime less reprehensible than it otherwise would be, or 'tend to palliate or lessen its guilt.'") (quoting Black's Law Dictionary, Sixth Edition (1990)). The government has alleged that no such extenuating circumstances exist. *See* Compl. ¶ 51 ("Corral has not established, and cannot establish, extenuating circumstances with regard to the crime he committed, and he therefore cannot avoid the regulatory bar on establishing good moral character found in 8 C.F.R. § 316.10(b)(3)(iii)."). But Corral denied this in his answer, *see* Def.'s Answer to Compl. ¶ 51, and neither his guilty plea nor the state court judgment establish the absence of

17

extenuating circumstances, because that issue was not before the state court at the time it accepted Corral's plea.

Because the pleadings do not clearly, unequivocally, and convincingly establish the absence of extenuating circumstances, the government has not proven that it is clearly entitled to judgment as a matter of law that Corral would have been ineligible for naturalization due to unlawful acts adversely reflecting on his moral character. Accordingly, the government is not entitled to judgment on the pleadings with respect to count 2 of the complaint.

### 3. Count 5 (procurement of naturalization by concealment of a material fact or by willful misrepresentation)

Lastly, the government has moved for judgment on the pleadings on count 5. The government contends that the pleadings clearly and unequivocally demonstrate that Corral willfully misrepresented or concealed the material fact of his crime and that he procured citizenship as a result of the misrepresentation.

Citizenship orders and certificates of naturalization are "procured by concealment of a material fact or by willful misrepresentation" if four independent requirements are met: (1) the naturalized citizen misrepresented or concealed some fact; (2) the misrepresentation or concealment was willful; (3) the fact was material; and (4) the naturalized citizen procured citizenship as a result of the misrepresentation. *Kungys v. United States*, 485 U.S. 759, 767 (1988). As the Seventh Circuit has since explained, this means that the government must show that that "it is 'fair to infer that the citizen was actually ineligible'" for naturalization.[8] *United States v. Latchin*, 554 F.3d 709, 714

---

[8] Like *Maslenjak*, *Latchin* dealt with section 1451(a)'s criminal counterpart, 18 U.S.C. § 1425(a). *Latchin*, 554 F.3d at 712. The Seventh Circuit explained, however, that the

(7th Cir. 2009) (quoting *Kungys*, 485 U.S. at 784 (Brennan, J., concurring)); *United States v. Romero-Ramirez*, No. 14-C-0522, 2015 WL 4492352, at *4 (E.D. Wis. July 23, 2015).

Corral has denied that the INS agent who conducted his May 2000 naturalization interview asked him, in accordance with Question 15(a) in Part 7 of the Form N-400, if he had ever knowingly committed any crime for which he had not been arrested. *See* Def.'s Answer to Compl. ¶ 19. Corral further contends that the fact that the INS agent made a number of red marks through that question on the Form N-400 raises a material issue of fact regarding whether he actually asked Corral the question during the interview. *See* Compl., Ex. E at 3. Corral argues that the government has not met its burden to show that the INS agent asked the relevant question because the government's affidavit of good cause for this denaturalization action was prepared by someone other than the agent who interviewed Corral. *See* Compl., Ex. A at 9. The government responds that even if Corral did not make a misrepresentation or willfully conceal his crime during the naturalization interview, the pleadings nonetheless constitute clear, unequivocal, and convincing evidence that Corral procured his naturalization by concealment or willful misrepresentation of a material fact because he did not disclose his crime when he first filed his signed naturalization application in January 1999.

As this Court has already noted, however, the aggravated criminal sexual abuse charge to which Corral pled guilty and of which he was subsequently convicted could

---

distinction between the two statutes was trivial on this point, because "both require a material misrepresentation and procurement of citizenship." *Id.* at 713 n.3.

have taken place any time between June 9, 1998 and February 26, 2000. *See* Aug. 9, 2000 Indictment at 1. Thus, Corral could have committed the crime *after* he signed and filed his naturalization application on January 14, 1999, in which case, his negative answer to Question 15(a) on the Form N-400 would not necessarily have been a willful concealment or misrepresentation. The Court therefore finds that there is a genuine factual dispute regarding whether Corral procured his citizenship by willful misrepresentation or concealment of a material fact. For this reason, the Court denies the government's motion for judgment on the pleadings on count 5 of the complaint.

## Conclusion

For the foregoing reasons, the Court denies Corral's motion to dismiss / strike the complaint (and his request for discovery and a hearing) [dkt. no. 8]. The Court grants the government's motion for judgment on the pleadings with respect to count 1 of the complaint, but denies the motion with respect to counts 2 and 5 [dkt. no. 10]. The case is set for a status hearing on August 8, 2018 at 9:30 a.m. The government should be prepared to discuss at that time how it proposes to deal with the remaining claims in its complaint.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 29, 2018